UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2/13/07_

CONSUB DELAWARE LLC,            :
                               :
            Plaintiff,         :        **OPINION AND ORDER**
                               :        **06 Civ. 13153 (SAS)**
      - against -              :
                               :
SCHAHIN ENGENHARIA LIMITADA,   :
                               :
            Defendant.         :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Consub Delaware LLC ("Consub") brings this admiralty and

maritime action to recover for breach of contract against Schahin Engenharia

Limitada ("Schahin"). After filing its Verified Complaint (the "Complaint"),

Consub obtained an *ex parte* order for process of maritime attachment. Schahin

moved to vacate that order. The Court heard oral argument on that motion but

reserved decision. Thereafter, Schahin moved to seek leave to file an interlocutory

appeal in the event that its motion to vacate were denied. For the reasons

discussed below, the motion to vacate is denied, but the motion for leave to file

an interlocutory appeal is granted.

**I.     BACKGROUND**

On November 13, 2006, Consub filed its Complaint seeking damages

for breach of contract in the amount of $5,986,117.65 inclusive of interest, costs and attorney's fees.[1] The claims in the Complaint arise out of the ACMA 2001 Submarine Telecommunications Cable Maintenance and Related Services Agreement dated August 10, 2000 (the "ACMA Agreement") and the related Novation Agreement dated November 8, 2001 (the "Novation Agreement").[2] Consub is not a party to the ACMA Agreement, but the Novation Agreement, to which Consub is a party, provides that Consub agrees to "be bound by all of the provisions of the [ACMA] Agreement as if it had originally entered into the Agreement."[3]

The ACMA and Novation Agreements both contain choice of law and forum selection clauses. Article 22.1 of the ACMA Agreement provides that "[t]he validity and interpretation of this Agreement and the legal relation between the Parties thereto shall be governed by the English Law." Article 22.2 provides

---

[1]    Consub demands $4,765,600 plus interest at 8% per annum and attorney's fees and expenses, which are alleged to be routinely recoverable under English law, totaling $5,986,117.65.

[2]    The ACMA Agreement and the Novation Agreement are attached to the Declaration of Ronaldo Gomes Moidano, Telecom Manager for Schahin, in Support of Motion to Vacate Maritime Attachment ("Moidano Decl."), as Exhibits A and B, respectively.

[3]    Novation Agreement, at "Whereas" No. 3.

-2-

that "[a]ll disputes . . . between the Parties with respect to any matter or thing arising out of or relating to the Agreement . . . may be referred to litigation in the event that they cannot otherwise be resolved by the Parties . . . ."  Finally, Article 22.4 provides that "[t]he Agreement shall be considered as an Agreement made in England and subject to English law under the exclusive jurisdiction of the courts of England and Wales."

Likewise, the Novation Agreement at paragraph 3.1 provides that "[t]his Novation Agreement shall be governed by and construed in accordance with the laws of England."  Paragraph 3.2 provides that "[e]ach of the parties hereby submit to the exclusive jurisdiction of the English Courts in relation to any dispute or claim arising out of or in connection with this Novation Agreement."

On November 14, 2006, Consub sought and obtained the issuance of process of maritime attachment and garnishment pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (the "Attachment Order").  The Attachment Order provides that it "shall issue against all tangible or intangible property belonging to, claimed by or being held for Schahin by any garnishees within this District" in an amount up to and including the amount of damages sought in the Complaint, and lists by name various garnishee banks found within this District.

-3-

On December 5, 2006, pursuant to the Attachment Order, Standard Chartered Bank, one of the named garnishees, seized an electronic fund transfer ("EFT") in the amount of $4,281,767.96, that was being routed through its bank. Schahin had instructed its bank, Banco Schahin, S.A. ("Banco Schahin"), a Brazilian bank, to transfer funds from its account at Banco Schahin to a third-party's bank account at Clariden Bank in Zurich, Switzerland, a United States Dollar denominated account. Banco Schahin had to route the transfer through an intermediary bank in the United States in order to convert the funds from Brazilian Real into United States Dollars. Standard Chartered Bank was instructed to serve as that intermediary bank for this particular EFT.

On December 15, 2006, Schahin moved, by order to show cause, to vacate the Attachment Order and the attachment of the EFT. The Court heard oral argument on the motion on December 22, 2006.

## II.   LEGAL STANDARD

### A.   Maritime Attachments

In order to obtain a maritime attachment under Rule B, a plaintiff must demonstrate that "(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory

-4-

or maritime law bar to the attachment."[4]  The defendant then bears the burden to

show that an attachment order should be vacated, which it can do by showing that

"(1) the defendant is subject to suit in a convenient adjacent jurisdiction; (2) the

plaintiff could obtain *in personam* jurisdiction over the defendant in the district

where the plaintiff is located; or (3) the plaintiff has already obtained sufficient

security for the potential judgment . . . ."[5]

## B.     Interlocutory Appeals Under Section 1292(b)

Appeals of interlocutory district court orders are governed by 28

U.S.C. § 1292(b).  Under section 1292(b), the order being appealed must "(1)

involve a controlling question of law (2) over which there is substantial ground for

difference of opinion," and the movant must also show that "(3) an immediate

appeal would materially advance the ultimate termination of the litigation."[6]  In

addition, leave to appeal is warranted only when the movant demonstrates the

existence of "exceptional circumstances"[7] sufficient to overcome the "general

---

[4]     *Aqua Stoli Shipping Ltd. v. Gardner Smith PTY, Ltd.*, 460 F.3d 434,
445 (2d Cir. 2006) (footnote omitted).

[5]     *Id.* at 445 & n.5.

[6]     28 U.S.C. § 1292(b).

[7]     *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006).

aversion to piecemeal litigation"[8] and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."[9] Interlocutory appeal "is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' . . . and is not intended as a vehicle to provide early review of difficult rulings in hard cases."[10] The decision whether to grant an interlocutory appeal from a district court order lies within the district court's discretion.[11]

"In regard to the first prong, the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."[12] The question must also be "controlling" in

---

[8] *In re AroChem Corp.*, 176 F.3d 610, 619 (2d Cir. 1999). *Accord Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 95 (2d Cir. 1997).

[9] *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quotation marks and citations omitted).

[10] *In re Levine*, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

[11] *See, e.g., Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995) ("district courts [have] first line discretion to allow interlocutory appeals"); *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003); *DM Rothman Co., Inc. v. Cohen Mktg. Int'l, Inc.*, No. 98 Civ. 7905, 2006 WL 2128064, at *1 (S.D.N.Y. July 27, 2006).

[12] *In re Worldcom, Inc.*, No. M47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003*)*.

the sense that reversal of the district court's order would terminate the action, or at

a minimum that determination of the issue on appeal would materially affect

the litigation's outcome.[13]

   As to the second prong, the "substantial ground for a difference of

opinion" must arise out of a genuine doubt as to whether the district court applied

the correct legal standard in its order.[14]  The requirement that such a substantial

ground exist may be met when "(1) there is conflicting authority on the issue, or

(2) the issue is particularly difficult and of first impression for the Second

Circuit."[15]  However, it is not sufficient that the relevant case law is "less than

clear" or allegedly "not in accord,"[16] or that there is a "strong disagreement among

the parties."[17]  "A mere claim that a district court's decision was incorrect does not

---

   [13]   *See In re XO Commc'ns, Inc.,* No. 03 Civ. 1898, 2004 WL 360437, at
\*3 (S.D.N.Y. Feb. 26, 2004); *North Fork Bank v. Abelson,* 207 B.R. 382, 389-90
(E.D.N.Y. 1997).

   [14]   *In re Worldcom,* 2003 WL 21498904, at \*10 (citation omitted).

   [15]   *In re Lloyd's Am. Trust Funds Litig.,* No. 96 Civ. 1262, 1997 WL
458739, at \*5 (S.D.N.Y. Aug. 12, 1997) (citing *Klinghoffer v. S.N.C. Achille
Lauro,* 921 F.2d 21, 25 (2d Cir. 1990)).

   [16]   *North Fork Bank,* 207 B.R. at 390.

   [17]   *In re Iridium Operating LLC,* Nos. 99-45005, 01-02952, M47, 2003
WL 21507196, at \*1 (S.D.N.Y. June 30, 2003) (stating that to demonstrate that
there is a substantial ground for difference of opinion a party "must show that the
issue is difficult and of first impression and involves more than just a strong

-7-

suffice to establish substantial ground for a difference of opinion."[18]  Rather, the

district court must "analyze the strength of the arguments in opposition to the

challenged ruling when deciding whether the issue for appeal is truly one on

which there is *substantial* ground for dispute."[19]

Finally, as to the third prong, "'[a]n immediate appeal is considered to

advance the ultimate termination of the litigation if that appeal promises to

advance the time for trial or shorten the time required for trial.'"[20]  Courts place

particular emphasis on the importance of this last factor.[21]

## III.   DISCUSSION

---

disagreement among the parties") (quotation omitted).

[18]     *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014, 2005 WL 3440701, at *2 (S.D.N.Y. Dec. 14, 2005) (citations omitted).

[19]     *In re Flor*, 79 F.3d at 284 (quotation omitted).  *Accord Marlin v. United States Trustee*, 333 B.R. 14, 20 (W.D.N.Y. 2005).

[20]     *Transportation Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)).

[21]     *See Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996) ("The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."); *Lerner v. Millenco, L.P.*, 23 F. Supp. 2d 345, 347 (S.D.N.Y. 1998) ("The Court of Appeals has emphasized the importance of the third consideration in determining the propriety of an interlocutory appeal.").

## A.     Vacatur of the Maritime Attachment Order

Schahin does not attempt to meet its burden to show that the Attachment Order should be vacated by relying on any of the three methods established by the Second Circuit.[22]  Rather, Schahin argues that the Attachment Order and attachment of the EFT should be vacated on two other independent grounds.  *First*, Schahin argues that the EFT that was seized is not property and thus, cannot be seized under the Attachment Order.  *Second*, Schahin argues that the forum selection clauses preclude this Court from issuing a Rule B attachment.

### 1.     EFTs Are Property and Subject to Attachment Under Controlling Second Circuit Law

Schahin acknowledges that in *Winter Storm Shipping Ltd. v. TPI*, the Second Circuit held that "EFT funds in the hands of an intermediary bank may be attached pursuant to Admiralty Rule B(1)(a)."[23]  Schahin asserts, however, that the Second Circuit's recent decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith PTY, Ltd.*[24] has undercut *Winter Storm*'s holding.  This assertion is based on a

---

[22]     *See Aqua Stoli*, 460 F.3d at 445 & n.5.

[23]     310 F.3d 263, 278 (2d Cir. 2002).

[24]     460 F.3d at 434.

footnote in the *Aqua Stoli* in which the court states:

> The correctness of our decision in *Winter Storm* seems open to question, especially its reliance on [*United States v. Daccarett*, 6 F.3d 37, 55 (2d Cir. 1993),] to hold that EFTs are property of the beneficiary or sender of an EFT. Because *Daccarett* was a forfeiture case, its holding that EFTs are attachable assets does not answer the more salient question of *whose* assets they are while in transit. In the absence of a federal rule, we would normally look to state law . . . . Under state law, the EFT could not be attached because EFTs are property of neither the sender nor the beneficiary while present in an intermediary bank.[25]

Despite the fact that the Second Circuit — in dicta — questioned the correctness of the *Winter Storm*, it did not overrule *Winter Storm*. To the contrary, the *Aqua Stoli* court relied on *Winter Storm* as support for its statement that "EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction."[26] Indeed, the court affirmed the attachment of the EFT at issue in that case.[27] Moreover, the facts of *Winter Storm* are on all fours with the facts of this case in which an EFT, originated by defendant, was attached pursuant to a maritime order of attachment while present in an intermediary bank found in New York. The question raised in *Aqua Stoli* of "*whose* assets they are while in

---

[25]   *Id.* at 446 n.6 (emphasis in original) (citations omitted).

[26]   *Id.* at 436; *see also id.* at 446 ("EFTs will still be attached by plaintiffs").

[27]   *See id.* at 446.

transit"[28] is not at issue here and need not be addressed.  Thus, I conclude that *Winter Storm* remains good law and is binding on this Court.[29]

It follows that because this Court is bound to follow *Winter Storm* — which established a rule "derived from federal law" — "there is no occasion to look for guidance in state law."[30]  Consequently, defendant's remaining contentions regarding the propriety of attachment of EFTs under New York State law are inapposite.

### 2. The Forum Selection Clause Does Not Strip This Court of Jurisdiction to Enter and Enforce the Attachment Order

Schahin argues that the Attachment Order should be vacated on the basis that the forum selection clauses in the Agreements grant "exclusive jurisdiction" to English courts, thereby precluding Rule B attachments in the United States.[31]  The Ninth Circuit, in *Polar Shipping Ltd. v. Oriental Shipping*

---

[28]     *Id.* at 446 n.6 (emphasis in original).

[29]     *Accord AET Inc. v. Procuradoria de Servicos Martimos Cardoso & Fonesca*, No. 06 Civ. 6845, 2006 WL 3518263, at *2 (S.D.N.Y. Dec. 7, 2006) (rejecting the same arguments advanced here and following *Winter Storm* as binding precedent to affirm the maritime attachment of an EFT); *Maersk, Inc. v. Neewra, Inc.*, No. 05 Civ. 4356, 2006 WL 2854298, at *1-2 (S.D.N.Y. Oct. 6, 2006) (same).  No court within the Second Circuit has held to the contrary.

[30]     *Winter Storm*, 310 F.3d at 278.

[31]     For the purpose of this discussion, I assume, without deciding, that the forum selection clause in the contract is valid and enforceable.

-11-

*Corp.*, squarely addressed the issue of "whether, in an admiralty and maritime action where there is an enforceable foreign court selection clause, the district court . . . may ensure the availability of security pending a determination of the merits in the contractually selected forum."[32]  The court looked to the language of the forum selection clause, which stated that "[a]ny dispute arising under the charter shall be decided by the English Courts," and found that the parties did not evidence by that language an "inten[t] to limit proceedings to obtain prejudgment security to that forum" because Rule B "attachment does not fit neatly within the word 'dispute.'"[33]  Courts within this district have followed this approach.[34]

    As detailed above, the language of the forum selection clause in the ACMA Agreement states that "[t]he Agreement shall be considered as an Agreement made in England and subject to English law under the exclusive

---

[32]    680 F.2d 627, 631 (9th Cir. 1982).

[33]    *Id.* at 632.

[34]    *See, e.g.*, *Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal*, 411 F. Supp. 2d 386 (S.D.N.Y. 2006) (following *Polar Shipping* to permit Rule B attachment); *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F. Supp. 189 (S.D.N.Y. 1987) (following the reasoning in *Polar Shipping* to permit Rule B attachment even where the claims will be litigated elsewhere). English law is consistent with the approach followed in *Polar Shipping. See generally* Declaration of Timothy Jean-Paul Howe, Consub's proffered expert on English law, as to English law on Exclusive Jurisdiction Clauses ¶¶ 11-15.

jurisdiction of the courts of England and Wales."[35]  The parties focus their

arguments, however, on the forum selection clause in the Novation Agreement,

which states that "[e]ach of the parties hereby submit to the exclusive jurisdiction

of the English Courts *in relation to* any dispute or claim arising out of or in

connection with this Novation Agreement."[36]  The parties dispute whether the

language in the Novation Agreement provision manifests an express intent to have

not only the merits of any dispute arising out of the contract litigated solely in

England, but also prejudgment attachment proceedings.[37]

Schahin argues that the parties' intent as evidenced by that language

is that the forum selection clause was intended to be broad and to include

prejudgment attachment proceedings.  Schahin argues that the "in relation to" any

dispute or claim language distinguishes the present case from *Polar Shipping*,

which did not include the phrase "in relation to."  In other words, Schahin argues

that the holding of *Polar Shipping* that Rule B attachments "do[] not fit easily into

---

[35]      ACMA Agreement ¶ 22.4.

[36]      Novation Agreement ¶ 3.2 (emphasis added).

[37]      Both sides offer parol evidence of the intent of the parties in agreeing
upon the forum selection clause.  I need not consider that evidence because, as
discussed below, I find that the contract language is unambiguous.

the term 'dispute'" as used in the clause,[38] does not apply here because Rule B attachment proceedings are "in relation to" a dispute arising out of the Agreements.

Consub argues that the "in relation to" language does not distinguish the present case from *Polar Shipping* and its progeny. Indeed, Consub contends that the contract language reveals that the parties intended that the merits of the disputes or claims would be litigated in the English Courts but that ancillary proceedings such as Rule B attachments would still be available outside of that forum. This is especially so, Consub argues, given the importance in admiralty and maritime proceedings that a plaintiff have the means to secure the enforcement of any ultimate judgment wherever a defendant's assets may be found.

Although the use of the words "in relation to" may sound broader than the language in *Polar Shipping*, I find that the language of the Novation Agreement's forum selection clause is unambiguous and that the Agreements' exclusive jurisdiction clauses do not, and were not intended to, preclude Rule B attachment in this Court. Permitting Rule B attachment in the United States District Courts in no way interferes with the exclusive jurisdiction of the English

---

[38]     *Polar Shipping*, 680 F.2d at 632.

-14-

Courts to decide any matter "in relation to any dispute or claim" arising out of the Agreements.

This reading is supported by other provisions in the Agreements relating to arbitration as an alternative to litigation. *First*, the ACMA Agreement states that the arbitration award "may be enforced against the Parties to the arbitration proceeding or their assets *wherever they may be found*. Judgment upon the award may be entered in *any court having jurisdiction thereof*."[39]  This language anticipates the involvement of courts outside of England for the purpose of satisfying an eventual judgment. *Second*, the Novation Agreement, in the paragraph directly following the exclusive jurisdiction provision, provides that "[a]s [an] alternative to the English Courts, and if the parties so agree, *any dispute or claim arising out of or in connection with this Novation Agreement* may be settled in arbitration in accordance with [the ACMA] Agreement."[40]  This provision, which provides an alternative to the exclusive jurisdiction of English Courts, does not include the phrase "in relation to" but rather uses the same language that was considered in *Polar Shipping* and found not to preclude Rule B attachment.  These paragraphs, when read together, demonstrate that the exclusive

---

[39]     ACMA Agreement ¶ 22.6 (emphasis added).

[40]     Novation Agreement ¶ 3.3 (emphasis added).

-15-

jurisdiction agreement was not intended to be as broad as Schahin argues.[41]

## B.    Leave to Appeal

The sole ground on which Schahin seeks interlocutory appeal is this

Court's decision to follow *Winter Storm* and hold that EFTs are property and thus

subject to Rule B attachment. I find that this issue warrants immediate review on

appeal.

The first prong of section 1292(b) is met because the issue to be

appealed is a pure and controlling question of law. This issue can be decided with

---

[41]    This interpretation is also consistent with the *Polar Shipping* court's observations regarding the policy behind forum selection clauses in the admiralty and maritime context:

> We think that strong policy reasons also support the conclusion just stated. A primary reason for parties to agree to a foreign court selection clause, particularly one that names the English courts, is to achieve a neutral forum and to take advantage of that forum's expertise in admiralty litigation. In many admiralty actions, it would be merely fortuitous if the foreign forum, selected for its neutrality and expertise, also had available assets of the defendant to ensure that a judgment rendered by that forum would be enforceable there. . . .  For the court to infer that parties to a clause, which provides that all disputes under the charter shall be determined by a selected foreign court, intended that proceedings to obtain prejudgment security be limited to that foreign forum, could substantially prejudice an admiralty plaintiff, by leaving it without an effective remedy.

*Polar Shipping*, 680 F.2d at 633.

minimal, if any, reference to the record. If reversed, the attachment would be vacated, and it is undisputed that vacatur of the attachment would result in the termination of this action.[42]

The second prong of the section 1292(b) analysis is also satisfied here. There is certainly "substantial ground for a difference of opinion" as to the issue of whether EFTs are property subject to attachment because there are conflicting Second Circuit statements on this very issue. Indeed, the Second Circuit in *Aqua Stoli* essentially invited parties to challenge the underpinnings of its prior holding in *Winter Storm* when it stated that "[t]he correctness of our decision in *Winter Storm* seems open to question."[43] The only way that question could ever be raised would be on interlocutory appeal because under the current state of the law, district courts are bound to apply *Winter Storm* to attachments of EFTs.

Finally, as to the third prong, an immediate appeal here would advance the ultimate termination of the litigation because if Schahin prevails on

---

[42]     *Cf. Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 99 (S.D.N.Y. 1995) ("[Q]uestions of in personam and subject matter jurisdiction warrant certification under section 1292(b) because their resolution may dispose of a case." (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir. 1972))).

[43]     *Aqua Stoli*, 460 F.3d at 446 n.6.

-17-

appeal, the Rule B attachment will be vacated, which, as noted above, the parties do not dispute will result in the termination of this litigation.

## IV.   CONCLUSION

For the reasons set forth above, Schahin's motion to vacate the Attachment Order is denied in its entirety, but Schahin's request for leave to seek an interlocutory appeal of that denial is granted. The Clerk of the Court is directed to close these motions [Nos. 29 and 36 on the Docket Sheet].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 13, 2007

-18-

## - Appearances -

### For Consub Delaware LLC:

Joseph B. Shumofsky, Esq.
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177
(212) 415-9200

### For Schahin Engenharia Limitada:

Christopher Carlsen, Esq.
CLYDE & CO US LLP
405 Lexington Avenue
New York, NY 10174
(212) 710-3900