UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

CONSUB DELAWARE L.L.C.,

            Plaintiff,

   - against -

SCHAHIN EUGENHARIA LIMITADA,

            Defendant.

------------------------------------------------------- X

**OPINION AND ORDER**

06 Civ. 13153 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On November 17, 2006, this Court authorized the issuance of a process of maritime attachment and garnishment "against all tangible or intangible property belonging to, claimed by or being held for [Schahin Eugenharia Limitada ("Schahin")] by any garnishees within this District, including but not limited to . . . Standard Chartered Bank [("Standard Chartered")]."[1] On December 6, 2006, Standard Chartered suspended an electronic fund transfer ("EFT") of $4,281,767.96 that had originated from Schahin in Brazil.[2] Schahin had issued a

---

    [1]    Rule B Order, November 17, 2006.

    [2]    *See* 12/14/06 Declaration of Daniel Maranho Szikizay, Foreign Exchange Officer for Banco Schahin S.A. ¶¶ 1-2 ("Szikizay Decl.").

1

payment order to Banco Schahin S.A. ("Banco Schahin") to transfer funds from its account to a third party's account at Clariden Bank in Switzerland.³ The EFT had originated from Schahin, which held an account at Banco Schahin.⁴ The transfer was routed through Standard Chartered Bank ("Standard Chartered") in New York, at which point Standard Chartered suspended the EFT and placed the funds in a "segregated legal suspense account."⁵ On December 21, 2006, Schahin filed a motion to vacate the attachment, which was denied.⁶

On October 16, 2009, the United States Court of Appeals for the Second Circuit issued *Shipping Corporation of India Ltd. v. Jaldhi Overseas Pte Ltd.*, holding, *inter alia*, that "[b]ecause EFTs in the temporary possession of an intermediary bank are not property of either the originator or the beneficiary under New York law, they cannot be subject to attachment under Rule B."⁷ On October 21, 2009, this Court issued an Order in the above captioned action directing plaintiff to show cause why this Court's orders directing the Clerk of the Court to

---

³ *See* Schahin's Memorandum of Law in Response to Plaintiff's Opposition to Order to Show Cause ("Def. Opp.") at 2.

⁴ *See* Szikizay Decl. ¶¶ 2-4.

⁵ 12/6/06 Notice, Ex. A to Szikizay Decl.

⁶ *See Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 314 (S.D.N.Y. 2007).

⁷ 585 F.3d 58, 71 (2d Cir. 2009).

2

issue process of maritime attachment and garnishment and appointing process server pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure should not be vacated and any funds attached as EFTs should not be immediately released.

On November 2, 2009, Consub Delaware LLC ("Consub") submitted a response. Consub asserts that Schahin, as originator of the EFTs in issue, retained an attachable interest in the attached EFTs under article 4A of the New York Uniform Commercial Code's ("UCC") "money back guarantee" provision.[8] On November 6, 2009, Schahin submitted an opposition to Consub's response disputing that it retained any interest in the attached EFTs or that it had admitted to ownership as part of its motion to vacate.[9]

On November 13, 2009, the Second Circuit issued *Hawknet, Ltd. v. Overseas Shipping Agencies*, holding that *Shipping Corporation of India* applies retroactively.[10] As a result, EFTs may no longer be relied upon to maintain jurisdiction over a defendant that "'is not found within the district'" and that, as a result, a district court "would have to conclude that it can exercise personal

---

[8] *See* Consub's Brief in Opposition to Vacatur of Attachment Order and Release of Funds Attached at Standard Chartered Bank ("Pl. Mem.") at 3-6.

[9] *See* Def. Opp.

[10] No. 09 Civ. 2128, 2009 WL 3790654, at *3 (2d Cir. Nov. 13, 2009).

3

jurisdiction over the defendant by some other means."[11] The Second Circuit further held that "[p]rior to *Shipping Corp. of India*, an argument that the court lacked jurisdiction over defendant would have been directly contrary to controlling precedent in this Circuit."[12] Therefore, because "the doctrine of waiver demands conscientiousness, not clairvoyance," defendants that had not yet objected to the district court's jurisdiction over it had not waived the objection.[13] Accordingly, the Second Circuit remanded the action "to the District Court with instructions to enter an order to show cause why it should not dismiss the complaint for lack of personal jurisdiction."[14]

Having reviewed plaintiff's response and considered its arguments in light of *Shipping Corporation of India* and *Hawknet*, plaintiff's arguments are rejected in their entirety. Section 402, known as the "money bank guarantee" provision, provides in pertinent part:

> (3) . . . With respect to a payment order issued to a receiving bank other than the beneficiary's bank, acceptance of the order by the receiving bank obliges the sender to pay the bank the amount of the sender's order . . . . The obligation of that sender to pay its payment order

---

[11] *Id.* (quoting Fed. R. Civ. P. Supp. R. B(1)(a)).

[12] *Id.*

[13] *Id.*

[14] *Id.*

> is excused if the funds transfer is not complete . . . . (4) If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid [because the funds transfer was not completed], the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay.[15]

Put simply, "under Section 402(3), the sender's obligation to pay the receiving bank is excused in the event that the transfer is not completed. If payment has already been made, a sender can seek a refund from the bank it paid under Section 402(4)."[16] In *Grain Traders Inc. v. Citibank, N.A.*, the Second Circuit concluded that, generally, privity is required between the party seeking a refund and the bank from which it seeks that refund.[17] In accordance with that ruling, the Second Circuit affirmed the district court's dismissal of an originator's lawsuit under section 402 where it was brought against an intermediary bank.[18]

There is no privity between Schahin and Standard Chartered Bank.

---

[15]    N.Y. U.C.C. § 4-A-402(3), (4).

[16]    *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998).

[17]    *See id.* at 102 ("[W]e . . . conclude that § 4-A-402 allows each sender of a payment order to seek refund *only* from the receiving bank it paid," citing policies reasons such as Article 4-A's "primary goal[ ] to promote certainty and finality so that 'the various parties to funds transfers [will] be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately.'" (quoting N.Y. U.C.C. § 4-A-102, cmt.) (emphasis added)).

[18]    *See id.*

Schahin, as originator, instructed Banco Schahin – the originator's bank – to transfer funds. Banco Schahin then issued a payment order to Standard Chartered, an intermediary bank, to execute the transfer in favor of the beneficiary's bank. The EFTs then were attached at Standard Chartered. Under sections 402(3) and (4) and *Grain Traders*, Schahin is in privity with Banco Schahin only and has no attachable property interest in the right of refund from Standard Chartered. Consub argues that Schahin is in privity with Standard Chartered because Schahin and Banco Schahin should be treated as a single entity because they are part of the same corporate group.[19] There is no such rule. "To overcome the presumption of separateness afforded to related corporations, plaintiffs must come forward with the showing of actual domination required to pierce the corporate veil."[20] Consub has not offered any proof that would permit piercing the corporate veil.

Consub also argues that in the absence of privity, Schahin possesses an attachable property interest in the funds through Schahin's own conduct and the plain meaning of sections 402(3) and (4). Consub first argues that Schahin acknowledged that it possessed a property interest in the EFTs when it moved to

---

[19] *See* Pl. Mem. at 5-6.

[20] *DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (quotation marks and citations omitted).

vacate the attachment order and therefore cannot now deny its ownership.[21] However, Schahin's "acknowledgment" was made prior to *Shipping Corporation of India*. The Second Circuit stated in *Hawknet* that "'a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could have first been made.'"[22] Prior to *Shipping Corporation of India*, an argument that Schahin did not own the EFTs it originated because they were now in the hands of Standard Chartered "would have been directly contrary to controlling precedent in this Circuit."[23] *Shipping Corporation of India* overruled that precedent and the Circuit Court has now decided that Schahin does not have a property interest in an EFT in the hands of an intermediary bank. As a result, Schahin's prior "acknowledgment" is without legal effect.[24]

Consub also contends that sections 4-A-402(3) and (4) confer an attachable property interest on Schahin because no matter which entity has the right to sue the intermediary bank under *Grain Traders*, the attached funds will

---

[21] *See* Pl. Mem. at 4-5.

[22] *See* 2009 WL 3790654, at *2 (quoting *Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981)).

[23] *Id.* (citing *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002)).

[24] *See id.* at *3 (permitting defendants to raise the personal jurisdiction defense that would have otherwise been waived because the defense only became viable after *Shipping Corporation of India*).

ultimately return to Schahin. Thus, Consub argues, under section 4-A, it is Schahin's interest in the return of the funds that has been attached.[25] Consub raises a similar argument under section 4-A-402(5).[26] Section 402(5) provides that where an intermediary bank cannot give a refund to an originator's bank because the intermediary is not permitted to do so by operation of law or otherwise suspends payments, then the "first sender in the funds transfer that issued an instruction requiring routing through that intermediary bank is subrogated to the right of the bank that paid the intermediary bank to refund as stated in subsection (4)."[27] In such a scenario, the originator obtains a right to a refund from the intermediary bank directly, even though the originator has no direct relationship with the intermediary.[28]

Consub's argument that Schahin retains a direct property interest in the attached funds now resting in the hands of an intermediary bank is compelling. It appears that such an interest could be attachable property under Rule B, which defines attachable property in the broadest of terms. Specifically, Rule B notes that process of attachment can reach all of "the defendant's tangible or intangible

---

[25] *See* Pl. Mem. at 5-6.

[26] *See id.* at 6.

[27] N.Y. U.C.C. § 4-A-402(5).

[28] *See id.*

personal property"[29] and courts have construed this language expansively to recognize a variety of attachable interests – including funds in a bank account,[30] escrow in the court registry,[31] debts owed to a defendant,[32] and an arbitration award in defendant's favor.[33] Therefore, it is arguable that Schahin retains an attachable interest in its right to a refund of the attached EFTs.

However, the Second Circuit's decision in *Shipping Corporation of India* made clear that EFTs in the possession of an intermediary bank are "neither the property of the originator nor the beneficiary."[34] Contrary to that holding, Consub now asks this Court to draw a line between EFTs in the possession of an

---

[29] Fed. R. Civ. P. Supp. R. B(1)(a). *Accord Shipping Corp. of India*, 585 F.3d at 69 n.12 ("In Rule B attachment proceedings, jurisdiction is predicated on the presence within the court's territorial reach of property in which the Rule B defendant *has an interest*.") (emphasis added).

[30] *See Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2d Cir. 1996).

[31] *See Starboard Venture Shipping Inc. v. Casinomar Transp. Inc.*, No. 03 Civ. 644, 1993 WL 464686, at *5 (S.D.N.Y. Nov. 9, 1993).

[32] *See Trans-Asiatic Oil Ltd. v. Apex Oil Co.*, 743 F.2d 956, 960 (1st Cir. 1984).

[33] *See Oil Transport Co., S.A. v. Hilton Oil Transport*, No. 93 Civ. 1632, 1994 WL 757944, at *2 (S.D. Tex. July 25, 1994).

[34] *Shipping Corp. of India*, 585 F.3d at 71 ("'Neither the originator who initiates the payment nor the beneficiary who receives it holds title to the funds in the account at the correspondent bank.'" (quoting *Sigmoil Res., N.V. v. Pan Ocean Oil Corp. (Nigeria)*, 650 N.Y.S.2d 726, 727 (1st Dep't 1996))).

intermediary bank and the interest created by the originator's right of refund in those same EFTs. Yet Consub ignores the fact that for the situs of such intangible interest to be found in New York, Standard Chartered must owe an obligation to repay the funds directly to Schahin. It does not.

"Under New York law, . . . the situs of intangible property, such as beneficial interests, is 'the location of the party of whom performance is required by the terms of the contract.'"[35] Payment orders are akin to contracts in that the acceptance of the order by the receiving bank "obliges" the sender to pay the bank the amount of the sender's order and, if the sender is not obliged to pay for some reason, the bank receiving payment is "obliged" to refund payment.[36] As applied to the money back guarantee, the party who is required to issue a refund to the originator is the intermediary bank. However, there is no contractual relationship between the originator and the intermediary bank. Thus, the intermediary bank owes a refund only to the entity that sent the EFT to it in the first place – the

---

[35] *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507, 2009 WL 2568433 (S.D.N.Y. Aug. 18, 2009) (holding that funds frozen in New York were subject to attachment by New York courts) (quoting *ABKCO Indus., Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675 (1976)).

[36] N.Y. U.C.C. § 4-A-402(3) & (4). *Cf. In re Bennett Funding Group, Inc.*, 146 F.3d 136, 139 (2d Cir. 1998) ("[W]hen a depositor deposits funds into a general account he parts with title to the funds in exchange for a debt owed to him by the bank, thereby establishing a standard debtor-creditor relationship.").

*originator's bank*.[37]  Then, the originator's bank owes performance – *i.e.*, a refund – to the originator.[38]  The originator is only in a contractual relationship with its bank.  Thus, it is the location of the *originator's bank* that is relevant because the originator's bank is the party that owes performance to the originator.  Under this rationale, Standard Chartered owes performance only to Banco Schahin.  In turn, Banco Schahin owes performance to Schahin.  As a result, the situs of Schahin's beneficial interest is the location of Banco Schahin – here, Brazil.  Quite obviously, Brazil lies outside this Court's jurisdiction.

The subrogated rights created by section 402(5) do not alter this analysis.  Contrary to Consub's assertion, section 402(5) does not create a right of refund in Schahin.  Rather, section 402(5) creates rights in those originators that specifically designate the intermediary bank to be used in the transfer.[39]  There is

---

[37]  *See Grain Traders, Inc.,* 160 F.3d at 102.

[38]  *See id.*

[39]  *See id.* ("Where a right to refund has been triggered because a transfer was not completed, but one of the banks that received payment is unable to issue a refund because it has suspended payments, the orderly unraveling of the transfer is prevented and the risk of loss will be borne by some party to the transfer.  Article 4-A allocates that risk of loss to the party *that first designated the failed bank to be used in the transfer*. . . .  Under Section 402(5), all intervening senders are entitled to receive and retain payment and the *party that designated the failed bank* bears the burden of recovery by being subrogated to the right of the sender that paid the failed bank.") (emphasis added) (citing N.Y. U.C.C. § 4-A-402, cmt. 2 (where "Bank A [the sender] was required to issue its payment order to Bank C [the

no indication that Schahin directed that Standard Chartered be used in this transfer. As in *Grain Traders*, Schahin has no right to sue Standard Chartered for a refund. Accordingly, Schahin has no attachable interest under section 402(5). To hold otherwise would serve only to circumvent the Second Circuit's unambiguous intent to eliminate attachments of EFTs in the hands of intermediary banks in this District.[40] Therefore, section 4-A does not create an attachable interest for purposes of Rule B such that this Court has jurisdiction over Schahin.[41]

---

insolvent bank] because Bank C was designated as an intermediary bank by Originator[,] . . . . Originator takes the risk of insolvency of Bank C.")); *see also* T. Baxter & R. Bhala, *Proper and Improper Execution of Payment Orders*, 45 Bus. Law. 1447, 1461-63 (1990) (same).

[40] There is no indication that when the Second Circuit issued *Shipping Corporation of India* it considered the possibility that defendants retained an attachable property interest in EFTs in the possession of intermediary banks through the UCC money back guarantee provision. Nevertheless, the Second Circuit is aware that the provision exists and that it may create attachable property interests, as this issue was raised by Consub and noted by the Second Circuit on a prior appeal in this case. *See Consub Delaware LLC v. Schahin Engenharia Limitada*, 543 F.3d 104, 112 n.4 (2d Cir. 2008) (noting that Consub had raised the money back guarantee argument on appeal but stated that "[b]ecause *New York law does not apply here* to the issue of permissibility of the attachment of the EFT funds, we do not reach questions of Schahin's property interest in the funds under New York law" (emphasis added)), *abrogated on other grounds by Shipping Corp. of India*, 585 F.3d at 71. However, the Circuit has now decided that New York law does apply. Nonetheless, for the reasons discussed above, the money back guarantee provisions do not create an attachable property interest in New York.

[41] On December 11, 2009, Consub informed the Court via letter that it had been awarded full judgment in its favor in the underlying case against Schahin in London, which the EFTs restrained in this District had secured. Consub

The funds have been attached just over three years. There is no reason to continue the attachment any longer, particularly where Consub is free to seek leave to amend its Complaint if, at some later date, it is able to determine that Schahin has attachable property in the District. Accordingly,

IT IS HEREBY ORDERED that the ex parte Orders for Process of Attachment and Garnishment issued in this action be vacated.

IT IS FURTHER ORDERED that any funds attached as EFTs pursuant to those Orders be immediately released.

IT IS FURTHER ORDERED that the Complaint is hereby dismissed without prejudice. The Clerk of the Court is directed to close this case.

---

contends that the judgment in Consub's favor means that "the maritime attachment is now about to achieve its intended purpose – assuring (at least partial) satisfaction of the English judgment – and this Court's involvement in the matter will soon be over." 12/11/09 Consub Letter. The judgment in Consub's favor does not change the fact that this Court lacks jurisdiction over Schahin to continue the attachment or to order that the attached funds be released to Consub based on its success in another forum. *See, e.g., Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 398 (2d Cir. 2009) ("hold[ing] that the district court did not err by treating jurisdiction over either [defendant company's] property as a prerequisite to the enforcement" of an arbitration award).

13

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 15, 2009

## - Appearances -

**For Plaintiff:**

Joseph B. Shumofsky, Esq.
Neil E. McDonell, Esq.
Stephen M. Raab, Esq.
Dorsey & Whitney LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

**For Defendant:**

Christopher Carlsen, Esq.
Clyde & Co US LLP
405 Lexington Avenue
New York, New York 10174
(212) 710-3900